### In re ROGERS' ESTATE.

#### (Surrogate's Court, Suffolk County. October 15, 1914.)

TAXATION (§ 895*)—INHERITANCE TAX—LIFE ESTATE WITH POWER OF DISPOSITION.

Where a testator gave all of his property to his wife for her support, maintenance, and use, and that of the children, and upon her death gave what remained to the children and their heirs, forever, in assessing the transfer tax the interest given to the widow should be regarded as a transfer to her of the whole estate, as under Transfer Tax Law (Consol. Laws, c. 60) § 222, providing that taxes upon the transfer of any estate, property, or interest, conditioned, dependent, or determinable upon the happening of any contingency or future event, by reason of which the fair market value cannot be ascertained at the time of the transfer, shall accrue and become payable when the beneficiaries entitled thereto shall come into actual possession or enjoyment thereof, the possible interests of the children could not be appraised until the death of the widow, as they might not receive any property, and to assess against the widow only the value of the life estate might result in the bulk of the estate escaping taxation.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1714–1721; Dec. Dig. § 895.*]

Proceeding to appraise for taxation the estate of Frank W. Rogers, deceased. From a decree entered upon the report of the transfer tax appraiser, the decedent's widow appeals. Affirmed.

Baylis & Sanborn, of New York City, for appellant.

John J. Robinson, of Huntington, for respondent State Comptroller.

NICOLL, S. The will of the decedent disposes of his entire estate for the benefit of his wife and children, by a provision which is worded as follows:

"I give, devise and bequeath all my property, both real and personal, including all proceeds of life insurance policies, to my beloved wife, Mary B. Rogers, for her support, maintenance and use and that of my children; and at the death of my said wife I give, devise and bequeath what remains to my said children, their heirs and assigns forever."

In the appraisal of the estate under the Transfer Tax Law (Consol. Laws, c. 60, §§ 220–245) the appraiser proceeded upon the theory that the will gave the wife of the testator the absolute ownership of the property; and her taxable interest was therefore appraised as comprising the whole estate. A decree was entered in accordance with the appraiser's report, from which decree the widow appeals, contending that the will does not give her the fee, or absolute ownership, or even a life estate with absolute power of disposition of the estate, but that she should be taxed as the owner of a life estate only, and that the possible remainder of the estate, which may go to the children, should be appraised at its present value, to be ascertained by deducting the value of her life estate from that of the whole estate.

While the will does not, in terms, limit the interest of the widow to one for her life, and while it also places the whole estate at her disposal, it nevertheless imposes certain restrictions and limitations as to the purposes for which she may use the proceeds of the property, and thereby causes her interest to be classed as a life estate; and the remainder given to the children is valid, to the extent of the property that may be undisposed of at her death. Terry v. Wiggins, 47 N. Y. 512; Smith v. Van Ostrand, 64 N. Y. 278; Leggett v. Firth, 132 N. Y. 7; 29 N. E. 950; Seaward v. Davis, 198 N. Y. 415, 91 N. E. 1107; Seaward v. Tasker, 80 Misc. Rep. 570, 141 N. Y. Supp. 618.

The more recent decisions seem to enlarge the class of life estates, and to extend the application of that term to all estates, even if set forth in language importing an absolute title, where there is a remainder, however contingent, limited to take effect thereafter. In the case of Seaward v. Davis, supra, the will contained the following provision:

"Third. I give and bequeath all my personal property of every. * * * kind to my wife, excepting my piano, which I give to Lilly Corwin aforesaid. Whatever personal estate may remain at the decease of my wife I give and bequeath to Briel Davis and Abigail Davis."

There was in that case an unrestricted gift to the wife, but with a bequest over to others of whatever should remain of the estate at her decease. The interest of the wife was designated by the Court of Appeals as a "life estate with the absolute power of disposition during her lifetime." Her interest, however, would seem to be hardly distinguishable from that specified and defined in sections 149 and 150 of the Real Property Law (Consol. Laws, c. 50), which follow the wording of the Revised Statutes, and which are made applicable to personal property by section 11 of the Personal Property Law (Consol. Laws, c. 41). Sections 149 and 150 read as follows:

"Where an absolute power of disposition, not accompanied by a trust, is given to the owner of a particular estate for life or for years, such estate is changed into a fee absolute in respect to the rights of creditors, purchasers and incumbrancers, but subject to any future estates limited thereon, in case the power of absolute disposition is not executed, and the property is not sold for the satisfaction of debts.

"Where a like power of disposition is given to a person to whom no particular estate is limited, such person also takes a fee, subject to any future estates that may be limited thereon, but absolute in respect to creditors, purchasers and incumbrancers."

The absolute power of disposition is thus defined by sections 152 and 153 of the Real Property Law:

"Where a general and beneficial power to devise the inheritance is given to a tenant for life or for years, such tenant is deemed to possess an absolute power of disposition, within the meaning of, and subject to, the provisions of the last three sections.

"Every power of disposition by means of which the grantee is enabled, in his lifetime, to dispose of the entire fee for his own benefit, is deemed absolute."

It would seem, therefore, that there exists a species of estate which it is difficult to classify so that each may always be assigned to its proper place—estates of a hybrid nature, between a fee and a life estate, which seem authorized to answer to either name—and if they can be differentiated at all it must be by some process enabling us to recognize a distinction without a difference. This difficulty, it is true, does not present itself in the construction of the will now before us, as in this case the absolute power of disposition is not given to the first donee, and her interest must therefore be termed a life estate.; but a general examination of the subject leads to a realization of the fact that the practical differences between estates for life and those of absolute ownership do not altogether coincide with the theoretical distinctions that have been drawn between them, and that more satisfactory results may sometimes be reached by dealing with the actualities of the estates than by classifying them solely by their names.

The question that arises in this case is: How is the estate affected by the Transfer Tax Law, and how shall the situation be dealt with under that statute? If, as is possible, but not probable, no encroachment will be made by the widow upon the principal of this estate, and the children will ultimately receive it intact, and that state of facts could be assumed, the tax could be adjusted without difficulty; the interest of the widow being appraised as a life estate, and the value of the remainder being ascertained by deducting the value of the life estate from that of the whole estate.

Assuming, however, that after the widow has been taxed as for a life interest, she should find the income of the estate insufficient for her needs, and should resort to the principal, and by so doing exhaust the whole estate during her lifetime, as the testator seems to have contemplated, there would then be no remainder, and either the corpus of the estate would escape taxation, or, if the remainder had been previously appraised and taxed at its present value, the imposition of such tax would be inequitable, as it would fall upon those who receive nothing, and to whom there has been no actual transfer of property; for although the children in this case would have been, to some extent, beneficiaries, through their mother, they should not be taxed upon a fictitious estate that has no existence.

Under section 230 of the Transfer Tax Act provision is made for the taxation of future estates, whether vested or contingent, including expectant estates, where the beneficiaries are uncertain by reason of their being dependent upon a power of appointment under which they are to be thereafter named or a power of disposition by the exercise of which their estates may be diminished or defeated. The section directs

the immediate appraisal of the future estate in such cases, and the payment of the tax forthwith, at the highest rate which would be possible under any of the contingencies; and if it should turn out that the beneficiary were entitled to any exemption or to a lower rate, the overpayment must be refunded by the comptroller.

Section 222 of the act, however, permits the postponement of the tax proceeding where the expectant estate is dependent upon the happening of a contingency or future event, by reason of which its fair market value cannot be ascertained at the time of the transfer. In such cases the appraisal is deferred until the beneficiaries come into possession. The tax is declared to be then due and payable. The application of this section to the matter now before us would result in the postponement of the appraisal of this possible remainder until the decease of the widow.

It is the very apparent intent and purpose of the Transfer Tax Law that a tax shall be imposed upon every transfer of property, in excess of a fixed limit, which shall pass from one owner to another, in trust or otherwise, upon the decease of the first holder, under the intestacy law of the state, or by the will of the owner or his gift in contemplation of death. In the solicitude manifested in the endeavor to so frame the statute that no transfer shall escape, some ingenuity is displayed. If the possible remainder given to the children in this case is to be regarded as involving a veritable transfer to them, and subject to taxation, it seems clear that it cannot by any rational method be appraised and taxed at the present time, as it has not reached, and probably little or none of it ever will reach, the beneficiaries named, and there is no discoverable way of ascertaining its value.

If, therefore, this provisional gift to the children is to be treated as an actual transfer of a future estate, its appraisal must of necessity be deferred until the termination of the prior estate, with a strong probability, however, that when that time arrives there will be nothing to appraise. It may be that, as the law stands, this would be the proper course to pursue, and that by reason of a defect in the law a remainder of this kind cannot be seized and held by the tax-enforcing mechanism devised by the Legislature.

In the Matter of the Estate of Cager, 111 N. Y. 343, 18 N. E. 866, the facts were that the testator gave his residuary estate to his wife, "to be used and enjoyed and at her disposal during the term of her natural life." One-third of said estate, "that may remain at the decease of my wife" was left to an adopted daughter, and the remaining two-thirds to certain other beneficiaries. The transfer tax appraiser reported that the remainders might have a present value if the estate of the widow were held to be a life estate only, and he computed the value of the remainders tentatively upon that basis, but added that if the estate of the widow was to be construed as a fee, or a life estate with the power of disposition, he was of the opinion that the so-called remainders had no value whatever. The surrogate assessed the value of the future interests at the sum named by the appraiser, upon the theory that the widow had a mere life interest. The General Term of the Supreme Court reversed the ruling of the surrogate, and the Court of Ap-

peals concurred in such reversal. The question raised upon the appeals was only as to the validity of the tax upon the remaindermen; the correctness of the tax imposed upon the widow not being discussed or passed upon. Judge Ruger, in writing the opinion of the court, after showing that the remainders were, for the time being, incapable of any correct or reasonably approximate valuation, said in closing:

"Whether an appraisal of the value of these devises, for the purpose of taxation, may be made when they eventually come to the possession of the devisees, we are not called upon now to determine. It may be that the tax will be altogether lost to the state if an appraisal is not now allowed; but, if so, the fault lies in the act itself, and not in the construction which its language requires to be put upon it."

The same question arose in the Matter of Babcock's Estate, 37 Misc. Rep. 445, 75 N. Y. Supp. 926, affirmed by the Appellate Division, 81 App. Div. 655, 81 N. Y. Supp. 1117. In this case the testatrix gave to her brother—

"the use during his life of all the personal property of which I may die seised; and if the use thereof is not sufficient to suitably clothe, care for, and maintain him, then he is to have the use of so much of the principal * * * as is necessary. After the decease of my brother, W. E. Brown, if there remains unused by him any of the personal property, I give, devise, and bequeath the same as follows," etc.

The court held that the appraisal and taxation of the remainder must be postponed until the death of the life tenant.

In Re Granfield's Estate, 79 Misc. Rep. 374, 140 N. Y. Supp. 922, the will gave the testator's daughter one-half of his estate for and during her natural life, with full power to invest and reinvest the same, as she might see fit, and to dispose, by sale or otherwise, of such portions thereof as she might deem necessary, to execute deeds, etc., and on the death of the daughter "said one-half of the estate, or so much thereof as shall remain," was given to others. It was held that, as the value of the remainders was not ascertainable, the appraisal and taxation thereof must be deferred until the death of the daughter. In none of the cases above cited was the question of the proper appraisal and taxation of the estate of the first beneficiary considered. That interest had been taxed as a life estate only in each case, and an attempt had been made to tax the remainders, regardless of their liability to be defeated by the power of disposition.

The problem involved in the proper adjustment and division of the tax, where an estate is left by will to a life beneficiary with power to dispose of it in his lifetime, does not seem to be satisfactorily met by the Transfer Tax Act, or settled by any decision. Under the authorities above cited, and others to the same effect, it is quite clear that the interest purporting to be given to the children of the testator in this case cannot now be appraised. On the other hand, to postpone its appraisal until the decease of the widow would be practically the abrogation of the tax. As this mere possibility of the future acquisition of property cannot now be appraised, and its future appraisal, undertaken after the power of disposal has run its course, is likely to be an empty formality, amounting to the nullification of the statute, it follows that the tax must either be assessed against the widow, upon the theory that

the whole property has been transferred to her, or that the bulk of the estate will escape taxation and the purpose of the statute be defeated.

Neither course of procedure seems entirely consistent with the apparent intent of the Transfer Tax Law; but, as we are put to an election, it would seem that the interest given to the widow by this will should be regarded, for the purposes of the statute, as a transfer to her of the whole estate. The property has passed from the original owner, and that an actual transfer of it to some one has been made, and is not in abeyance, is axiomatic. It has come into the possession of the widow, and she may convert it into money, and appropriate the proceeds to "her support, maintenance, and use," and that of her children. What proportion she shall devote to her own use (for her necessities or otherwise), and what amount she shall expend upon the children, is not dictated by the will. Its terms are liberal. For all practical purposes she is the owner, and if the matter is viewed from a rational standpoint she is the person who should pay the tax out of the property. Having technically a life estate, she has not merely the use of the property, but something much more extensive, and while the remainder purporting to go to the children is recognized as a valid future estate (be it more or less) under the Real Property Law, yet being reducible to nothing it may be fairly considered as not having a taxable entity.

The statute does not undertake to define life estates, or to declare what estates shall be so classed and what shall be deemed to vest in the transferee the absolute ownership. We are not helped by that clause thereof which provides that, where any property shall be transferred subject to any charge, estate, or interest determinable by the death of any person, the increase accruing to any person upon the extinction or determination of such charge, estate, or interest shall be deemed a transfer of property, taxable under the provisions of this article in the same manner as though the person beneficially entitled thereto had then acquired such increase from the person from whom the title is derived.

The fact that if the estate of the widow were taxed in this instance as a life estate, and the remainder appraised forthwith at its present value, no tax would be imposed thereon, by reason of the exemption to which the children are entitled, is a circumstance which need not be considered in this connection, as we are dealing with the principles involved, and not with incidental matters bearing upon this particular case.

I have carefully considered the arguments advanced, and the authorities submitted, by counsel, but am unable to reach any other conclusion than that the interest of the widow should be regarded, for the purpose of taxation, as equivalent to the absolute ownership of the estate; although it must be said that the failure to discover in the Transfer Tax Act any provision directly applicable to the situation and decisive as to the procedure tends to leave any determination at which we may arrive not wholly free from doubt.

The decree appealed from should be affirmed.